**\*Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                                      :
YANA L. VASILYEVA,                     :
                                                      :       Civil Action No.: 09-709 (FLW)
       Plaintiff/Debtor,                :
                                                      :              **OPINION**
   v.                                         :
                                                      :
EDUCATIONAL RESOURCES,         :
INSTITUTE, INC., et al.,                    :
                                                      :
       Defendants.                      :
_____:

**WOLFSON, United States District Judge**,

      Presently before this Court is the appeal of Yana L. Vasilyeva ("Vasilyeva" or "Debtor") from an Order for Judgment from the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court") declaring Debtor's student loan debts to The Education Resources Institute, Inc. (NJHESAA), Educational Credit Management Corporation (ECMC) and Manhattan School of Music (together "Defendants"), as non-dischargeable pursuant to 11 U.S.C. § 523(a)(8).  For the following reasons, Debtor's Appeal is denied and the order of the Bankruptcy Court is affirmed.

**I.      Background Facts**

      The record reveals the following facts.  Debtor first filed a Chapter 7 petition on August 27, 2007, seeking relief from debts incurred as a result of student loans.  The Chapter 7 Trustee issued a Report of No Distribution on October 15, 2007, and the Debtor received a discharge on December 14, 2007.  Vasilyeva incurred the student loans in connection with earning a Bachelor of Arts degree in music at Manhattan School of Music and a Juris Doctorate degree from the

Thomas M. Cooley Law School.  The debts were owed to the NJHESAA, State of New York Higher Education Services Corporation, United Student Aid Funds, and the Manhattan School of Music.  Following an order of the Bankruptcy Court, ECMC, a student loan guarantor, accepted assignment from the State of New York Higher Education Services Corporation and United Student Aid of eleven Stafford student loans ("ECMC loans").  As of September 26, 2008, the balance of the ECMC loans totaled $143,769.99, and as of September 25, 2008, the NJHESAA loans totaled $37,973.39.  The only debts reflected in Debtor's Chapter 7 petition were the aforementioned student loans.  (ECMC Appx. Tran. 54: 21-24).

With respect to Debtor's financial situation, Debtor testified that she was involved in two lawsuits, one of which concluded in a judgment against her.  It appears that as a result, her wages have been garnished at various times at a rate of twelve to twenty-seven percent.  Further, she claimed that she applied for consolidation of her loans subsequent to her graduating Manhattan School of Music, but the application was denied.  According to her Schedule I, Debtor earns $846.36 per month as a piano instructor at Rider University, while her monthly expenses are listed as $1,850.  However, at trial, Debtor stated that her monthly wages intermittently vary between $930 and $1,500 and that her monthly expenses are approximately $2,500.

As to her living situation at the time of the appeal, Debtor resided in an apartment with her mother, who receives $668.25 per month in Supplemental Security Income.  Debtor holds a license to practice law in the State of New Jersey and has some legal experience, such as drafting wills and as a signing attorney/notary.  (ECMC Appx. Tran. 30, 37).  With regard to Debtor's health, she submitted in pre-trial memoranda that she suffers from debilitating migraines, double vision problems and nervous gastric cramps.  She testified that these medical problems have been

untreated because she cannot afford medical insurance or other health care services. She produced no medical records or medical evaluations regarding these ailments.

### A. The Bankruptcy Court's Opinion

In light of her circumstances, Debtor sought a hardship discharge of her student loans pursuant to 11 U.S.C. § 523(a)(8). The Bankruptcy Court found that, while student loans are typically not dischargeable in bankruptcy, "there is an exception if 'excepting such debt from discharge … would impose an undue hardship on the debtor and the debtor's dependents.'" Vasilyeva v. Educ. Res. Inst., Inc., No. 07-22164, 2008 Bankr. LEXIS 4036, at *4 (Bankr. D.N.J. Dec. 12, 2008) (citing 11 U.S.C. § 523(a)(8)). Because § 523 does not define "undue hardship," the Bankruptcy Court applied the "Brunner test," adopted by the Third Circuit in Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish), 72 F.3d 298 (3d Cir. 1995), to determine whether Debtor suffered "undue hardship." According to the Bankruptcy Court, demonstrating "undue hardship" for the purposes of § 523(a)(8) requires a showing that:

1) The debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;

2) Additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

3) The debtor has made good faith efforts to repay the loans

Vasilyeva, at 5 (citing Brunner v. New York State Higher Education Services Corp., 831 F.2d 395, 396 (2d Cir. 1987) (emphasis in the original). According to the Bankruptcy Court, the burden of proving the Brunner elements lies with the Debtor. Vasilyeva, at 5, (citing Faish at 306).

The Bankruptcy Court went on to conclude that Ms. Vasilyeva satisfied the first prong of the Brunner test. The Bankruptcy Court noted that, while the Third Circuit has not defined the boundaries of a "minimal" standard of living, several courts have held that "it does not mean a debtor has to live in poverty." Vasilyeva, at 6. The Bankruptcy Court reasoned that, because her expenses greatly exceeded her income, and because short term "belt-tightening" would not ameliorate her fiscal situation, Vasilyeva could not maintain a minimal standard of living. Vasilyeva, at 6.

The Bankruptcy Court then applied the second factor of the Brunner test, and found that Vasilyeva failed to establish that her current financial status was likely to persist for a significant portion of the repayment period of the student loans. In that connection, the Bankruptcy Court found that while Vasilyeva's caring for her mother is admirable, it is not sufficient to excuse Vasilyeva's financial obligations and that she presented "no evidence that her mother's disability imposes an unmanageable financial burden on her." Id. at 8. The court then addressed Vasilyeva's contention that her medical conditions preclude her from fulfilling her obligations. The Bankruptcy Court held that Vasilyeva failed to present any evidence showing a doctor's verification of her alleged medical conditions, and even if she did produce such evidence, she failed to prove her incapacity would continue for a significant portion of the repayment period. Ultimately, the Bankruptcy Court held that in light of Debtor's license to practice law in New Jersey, coupled with her past legal experience and other work experiences, she "has not proven by the preponderance of the evidence that she has an inability to maintain a minimal standard of living throughout the repayment period of the loans." Id. at 8.

Although Vasilyeva's failure to prove one element of the Brunner test is sufficient to preclude exception from discharge, the Bankruptcy Court nevertheless addressed the third factor

of the test and found that Vasilyeva had not made good faith efforts to repay the loans. In Debtor's favor, the Bankruptcy Court found that she did not take or make extravagant trips or purchases and that she did not appear to have led an excessive lifestyle. However, the Bankruptcy Court ultimately found that her failure to make more than one payment on the loan outweighed any evidence of good faith. Not only did Ms. Vasilyeva fail to show that she suffered from debilitating medical conditions, but she also did not provide evidence to support her claim that she applied for debt consolidation. Finally, the Bankruptcy Court found inexcusable that Debtor failed to explore the William D. Ford Direct Loan consolidation program and that the Debtor took "two full months of vacation." Vasilyeva, at 12. Based on these actions the Court found that Debtor did not act in good faith to repay her loans. In light of these reasons, the Bankruptcy Court concluded that Debtor's student loans were non-dischargeable.

## II.     Standard of Review

When reviewing a bankruptcy court's decision, the standard of review is determined by the nature of the issues presented on appeal. In particular, factual determinations reviewed on appeal should not be set aside unless found to be "clearly erroneous." In re Continental Airlines, 150 B.R. 334, 336 (D. Del. 1993) (citing Bankruptcy Rule 8013 and In re Morissey, 717 F.2d 100, 104 (3rd Cir. 1983)). A factfinder, rather than a reviewing body, is generally in a better position to make judgments about the reliability of evidence; specifically, the reviewing body only acts pursuant to a written record, while the factfinder is able to evaluate the credibility of a live witness. See Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 113 S. Ct. 2264, 2280 (U.S. 1993). In turn, review of facts under the "clearly erroneous" standard is significantly deferential and requires a "definite and firm conviction that a mistake has been committed." Id. Conversely, legal conclusions from the bankruptcy court "are subject to plenary review by the

district court and are considered de novo on appeal." Continental, 150 B.R. 334 at 336. Mixed findings of fact and conclusions of law must be broken down, and the applicable standards - "clearly erroneous" or de novo –must be appropriately applied to each component. Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989) and Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102-03 (3d Cir. 1981)).

### III.  Discussion

Debtor argues that the Bankruptcy Court misinterpreted the "undue hardship" provision in 11 U.S.C. § 523(a)(8), and urges this Court to read the "undue hardship" provision of 11 U.S.C. § 523(a)(8) in accordance with the definition of "undue hardship" set forth in 11 U.S.C. § 524(c). (Appellant's Br. at 3). Appellees rebut that the sections are not comparable because the definition of "undue hardship" under § 524(c) applies only in the reaffirmation context. (Appellee's Br. at 7). The Court agrees.

Student loan debt is generally not dischargeable, but an exception exists wherein such loans may be discharged if "excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents." § 523(a)(8).  While the statute contains no definition for "undue hardship," the Third Circuit clearly requires bankruptcy courts to apply the Brunner test in determining "undue hardship." See Faish, 72 F.3d at 306 (holding that the Brunner "undue hardship" test must be applied by bankruptcy courts within the Third Circuit). Importantly, the Third Circuit makes no mention of § 524(c) in its holding. In fact, it is well-settled law that the Brunner test is the test standard for resolving "undue hardship" determinations and it has been adopted by the Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, and the Eleventh Circuits. See U.S. Dep't of Educ. V. Gerhardt (In re Gerhardt),

348 F.3d 89, 91 (5th Cir. 2003); Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler), 397 F.3d 382 (6th Cir. 2005); In re Roberson, 999 F.2d 1132, 1135 (7th Cir. 1993); United Student Aid Funds, Inc. v. Pena (In re Pena), 155 F.3d 1108, 1112 (9th Cir. 1998); Educ. Credit Mgmt. Corp. v. Polleys (In re Polleys), 356 F.3d 1302 (10th Cir. 2004); Hemar Ins. Corp. of Am. V. Cox (In re Cox), 338 F.3d 1238, 1241 (11th Cir. 2003).

By contrast, § 524(m)(1), which Debtor cites as providing "a firm sense of what constitutes undue hardship," applies in the context of reaffirmation of a dischargeable debt:

> Until 60 days after an agreement of the kind specified in subsection (c) is filed with the court (or such additional period as the court, after notice and a hearing and for cause, orders before the expiration of such period), it shall be presumed that such agreement is an undue hardship on the debtor if the debtor's monthly income less the debtor's monthly expenses as shown on the debtor's completed and signed statement in support of such agreement required under subsection (k)(6)(A) is less than the scheduled payments on the reaffirmed debt.
> 11 U.S.C. § 524.

However, issues of reaffirmation of dischargeable debt are inapposite to the present case. Debtor is not seeking to reaffirm her debt, but instead, she is seeking to discharge her debt. For these reasons, the Court finds in its plenary review that the Bankruptcy Court did not err as a matter of law in applying the Brunner test.

Next, Debtor argues that the Bankruptcy Court erred by distorting the facts of the case and misinterpreting her written and oral testimony. In other words, Debtor argues that the Bankruptcy Court erred in holding she did not satisfy the second and third elements of the Brunner test. With regard to the second element, Debtor appears to contend that because she could not afford to verify her alleged medical conditions, the Bankruptcy Court erred in finding that Debtor provided no proof of the existence of such medical conditions. Vasilyeva, at 7. This

Court finds no error in the Bankruptcy Court's legal determination that, under Brunner, the Debtor must show "a total incapacity … in the future to pay [her] debts for reasons not within [her] control." Vasilyeva, at 7.  Furthermore, the Bankruptcy Court committed no error in concluding that, under In re Brightful, 267 F.3d 324, 328 (3d Cir. 2001), "the [medical] condition must interfere with the debtor's execution of job responsibilities and it must be verified by a doctor." Vasilyeva, at 7.  Debtor cites no case law to support her contrary proposition that the Bankruptcy Court should have overlooked the fact that she provided no doctor's testimony or records due to her indigent status.

Furthermore, the Bankruptcy Court did not err in finding that Vasilyeva failed to meet her burden of proof in demonstrating that her inability to pay her debts will "continue for a significant portion of the loan repayment period." Id. at 8.  The Bankruptcy Court properly found that Vasilyeva has the credentials and time to obtain other employment.  It is undisputed that Vasilyeva has some legal experience and a license to practice law in New Jersey (ECMC Appx. Tran. 30, 37, 50).  She is also fluent in several languages.  Moreover, Debtor works as a music teacher for only ten months of the year and thus, she could find supplementary employment during that time.  In light of these findings, the Court concludes that the Bankruptcy Court's holding that Vasilyeva failed to carry her burden of proof with regard to the second element of the Brunner test, was not clearly erroneous.

Debtor next submits that the Bankruptcy Court erred in finding bad faith because Debtor refused to enter into the William D. Ford Direct Loan program and that she only made a single loan payment of 1,000 dollars.  The Court is not persuaded by Debtor's argument.

As to the third element of the Brunner test, the Bankruptcy Court properly looked to Third Circuit case law in concluding that Debtor failed to make good faith efforts to repay her

student loans. See Pelliccia v. United States Dep't of Education, 67 Fed. Appx. 88, 91 (3d Cir. 2003) (the good faith analysis must consider "(1) whether the debtor incurred substantial expenses beyond those required to pay for basic necessities and (2) whether the debtor made efforts to restructure his loan before filing his petition in bankruptcy").[1] In Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour), 433 F.3d 393, 397, 402 (4th Cir. 2005), the court held that even though the debtor made twenty-three student loan payments, the debtor did not demonstrate the "requisite effort to repay her loans." By contrast, Vasilyeva made only one payment on her student loans; this weighs heavily against her claim of good faith, regardless of her contention that the payment was made during a period where she was unemployed.

With regard to whether Debtor made efforts to restructure the loan, she testified that she applied to consolidate her loans shortly after graduating from the Manhattan School of Music, though that attempt was denied. While this is noteworthy, tellingly, as the Bankruptcy Court found, Debtor did not have any proof of such attempt, and further she did not apply for consolidation after acquiring far greater debts as a result of her graduate work at the Thomas M. Cooley Law School. Moreover, Debtor admits that she refused to enter into the William D. Ford Direct Loan program pursuant to 34 C.F.R. § 685.216. As the Bankruptcy Court noted, several courts have held that participation in the program should not alone be dispositive of the issue of good faith. See, e.g, In re Fahrer, 308 B.R. 27, 35 (Bankr. W.D. Mo. 2004); In re Limkemann, 314 B.R. 190, 196 (Bankr. N.D. Iowa 2004); In re Cheney, 280 B.R. 648, 664-66 (N.D. Iowa 2002). However, it is nevertheless highly indicative of a good faith effort to repay the obligations a debtor voluntarily assumes. See In re Frushour, 433 F.3d at 402 ("The debtor's effort to seek out loan consolidation options that make the debt less onerous is an important

---

[1] Debtor does not dispute this legal standard.

component of the good-faith inquiry … it illustrates that the debtor takes her loan obligations seriously, and is doing her utmost to repay them despite her unfortunate circumstances"); see also Educ. Credit Mgmt. Corp. v. Young, 376 B.R. 795 (E.D. Tex. 2007); In re Tirch, 409 F.3d 677, 682-83 (6th Cir. 2005).  While the Bankruptcy Court acknowledged that the question of good faith was a "close call," it ultimately held against Debtor on this issue due to Debtor's repayment history and the lack of interest in seeking loan consolidation options.  Indeed, irrespective of the closeness of the Bankruptcy Court's determination, this Court finds no basis to find that the Bankruptcy Court's decision that Debtor did not make good faith efforts to repay the loans was "clearly erroneous."  Accordingly, the Bankruptcy Court's decision is affirmed.

**IV.    Conclusion**

For the foregoing reasons, Debtor's Appeal is denied and the order of the Bankruptcy Court is affirmed.

/s/ Freda L. Wolfson  
Hon. Freda L. Wolfson, U.S.D.J.

Dated: October 20, 2009